IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

GLK Foods, LLC,

        Plaintiff,

V.

Travelers Casualty and Surety Company of America,

        Defendant.

Case No. 17-cv-1116

## ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Defendant Travelers Casualty and Surety Company of America, by its attorneys Litchfield Cavo LLP, and for its Answer and Defenses to Plaintiff's Complaint for Declaratory Judgment (the "Complaint") states as follows:

### NATURE OF ACTION

1. GLK is the largest producer of sauerkraut in the world, processing more than 120,000 tons of raw cabbage into sauerkraut annually. GLK has operations in the states of New York and Wisconsin, including a sauerkraut cannery plant in Bear Creek, Wisconsin.

**ANSWER:** Defendant admits GLK operates a sauerkraut production facility in Bear Creek, Wisconsin. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1 of the Complaint.

2. For several years, GLK employed laborers from Mexico to assist at the Bear Creek cannery during the cutting season, which typically runs from August to November.

**ANSWER:** On information and belief, Defendant admits the allegations in paragraph 2 of the Complaint.

1

3. GLK brings this action pursuant to 28 U.S.C. § 2201(a), asking the Court to determine, as a matter of law, that Travelers must indemnify GLK for damages awarded against GLK in two underlying actions brought by certain of these migrant workers.

**ANSWER:** Paragraph 3 of the Complaint contains legal conclusion or assertions to which no answer is required. Further answering, Defendant admits GLK brought this action against it seeking a declaration of Defendant's coverage obligations, if any. Defendant denies the remaining allegations in paragraph 3 of the Complaint, and specifically denies the allegation it must indemnify GLK for damages awarded against GLK in two underlying actions brought by the migrant workers.

4. There is an actual and continuing controversy between GLK and Travelers over the extent to which the employment practices liability ("EPL") coverage provided by Travelers to GLK under its Wrap+ insurance policy obligates Travelers to indemnify GLK for the damages awarded in the underlying actions.

**ANSWER:** Paragraph 4 of the Complaint contains legal conclusions or assertions to which no answer is required. To the extent that an answer is required, Defendant admits there is a "controversy between GLK and Travelers over the extent to which the employment practices liability ("EPL") coverage provided by Travelers to GLK under its Wrap+ insurance policy obligates Travelers to indemnify GLK for the damages awarded in the underlying actions." Defendant denies any remaining allegations in paragraph 4 of the Complaint, and specifically denies the allegation that it is obligated to indemnify GLK for the damages awarded in the underlying actions.

## PARTIES

5. GLK is a limited liability company organized under the laws of Wisconsin, with its principal place of business at 158 E. Northland Ave., Appleton, Wisconsin. GLK, accordingly, is a citizen of Wisconsin.

**ANSWER:** On information and belief, Defendant admits the allegations in paragraph 5 of the Complaint.

6. Travelers is a stock insurance company organized under the laws of Connecticut, with its principal place of business at One Tower Square, Hartford, Connecticut. Travelers, accordingly, is a citizen of Connecticut.

**ANSWER:** Defendant admits the allegations in paragraph 6 of the Complaint.

## JURISDICTION AND VENUE

**7.** The Court has diversity jurisdiction over this case, pursuant to 28 U.S.C. § 1332(a)(1), because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** Paragraph 7 of the Complaint contains legal conclusions or assertions to which no answer is required. To the extent an answer is required, Defendant admits the allegations in paragraph 7 of the Complaint.

8. The Court has personal jurisdiction over Travelers, pursuant to Wis. Stat. § 801.05(10)(a) and (h).

**ANSWER:** Paragraph 8 of the Complaint contains legal conclusions or assertions to which no answer is required. To the extent an answer is required, Defendant admits the Court has personal jurisdiction over Travelers in this case.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other reasons, GLK is a resident of this judicial district, and a substantial part of the events giving rise to the insurance claim occurred in this judicial district.

**ANSWER:** Paragraph 9 of the Complaint contains legal conclusions or assertions to which no answer is required. To the extent an answer is required, Defendant admits on information and belief GLK is a resident of this judicial district and a substantial part of the events giving rise to the insurance claim occurred in this judicial district. Defendant denies any remaining allegations in paragraph 9 of the Complaint.

## FACTUAL BACKGROUND

10. GLK is the largest producer of sauerkraut in the world, processing more than 120,000 tons of raw cabbage into sauerkraut annually. GLK has operations in the states of New York and Wisconsin, including a sauerkraut cannery plant in Bear Creek, Wisconsin.

**ANSWER:** Defendant admits GLK operates a sauerkraut production facility in Bear Creek, Wisconsin. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10 of the Complaint.

11. At the Bear Creek plant, raw cabbage grown at GLK farms and elsewhere is brought into the yard by truck. After field waste is separated out, each individual head of cabbage is "cored" using a person-operated machine. The heads of cabbage are subsequently fed from the machines into a cleaner that sprays high-pressure water and tumbles the cabbage to remove outer leaves and dirt. Workers then inspect and trim the cabbage before it is shredded into coleslaw, salted, and put in vats for fermentation. This cutting and coring work is known as "trim-line" labor.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the Complaint.

12. GLK requires trim-line laborers during the "cutting season." The cutting season typically runs from August to November.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13. For several years, GLK hired Mexican migrant workers through the H-2B program, a temporary work visa program for non-agricultural workers, to serve as trim-line laborers during the cutting season.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

### The Underlying Actions

14. Alejandro Jurado Jimenez, *et al.* filed Case No. 12-CV-209 against GLK and its president, Ryan A. Downs, in this Court on February 29, 2012 (the *"Jimenez* case"). The *Jimenez* case was brought on behalf of approximately 210 migrant workers who worked at GLK during one or more of the 2006 through 2011 cutting seasons.

**ANSWER:** Defendant admits Alejandro Jurado Jimenez, *et al.* filed Case No. 12-CV-209 against GLK and its president, Ryan A. Downs, in this Court seeking damages on behalf of migrant workers who worked at GLK during one or more of the 2006 through 2011 cutting seasons. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14 of the Complaint.

15. Jose Enriquez Ramirez, *et al.* brought Case No. 12-CV-210 against GLK and Ryan A. Downs in this Court on the same day as the *Jimenez* case was filed (the "*Ramirez* case"). The *Ramirez* case was brought on behalf of approximately 35 migrant workers who were recruited by GLK in 2011, but then not provided jobs after they allegedly had incurred certain expenses in anticipation of employment.

**ANSWER:** Defendant admits Jose Enriquez Ramirez, *et al.* brought Case No. 12-CV-210 against GLK and Ryan A. Downs in this Court seeking damages on behalf of migrant workers who were recruited by GLK in 2011, but then not provided jobs after they allegedly had incurred certain expenses in anticipation of employment. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 of the Complaint.

16. The *Jimenez* plaintiffs alleged in their complaint, among other things, that GLK had breached its employment agreements with the plaintiffs by:

   a) paying first week wages below the applicable prevailing wage rate (based on a failure to reimburse plaintiffs for pre-employment expenses);

   b) failing to provide employment that complied with all applicable federal and state employment related laws and regulations;

   c) failing to provide 40 hours of work each week; failing to provide work for the full certified period of employment; and

   d) failing to provide or pay for all of the costs of return transportation when employment ended before the end of the certified employment period.

**ANSWER:** Defendant asserts the operative complaint in the *Jimenez* case speaks for itself and denies any allegation in paragraph 16 that is inconsistent with or an inaccurate characterization of that complaint. Defendant denies any remaining allegations in paragraph 16 of the Complaint.

17. The *Ramirez* plaintiffs made similar allegations in their operative complaint.

**ANSWER:** Defendant asserts the operative complaint in the *Ramirez* case speaks for itself and denies any allegation in paragraph 17 that is inconsistent with or an inaccurate characterization of that complaint. Defendant denies any remaining allegations in paragraph 17 of the Complaint.

18. The *Jimenez* and *Ramirez* plaintiffs moved for, and the Court granted, summary judgment on the breach of contract and other claims on May 23, 2016.

**ANSWER:** Defendant admits the Court entered an order granting summary judgment in favor of the *Jimenez* and *Ramirez* plaintiffs on certain of their claims on May 23, 2016. Defendant asserts the Court's May 23, 2016 Consolidated Decision And Order On Motions For Partial Summary Judgment (the "May 2016 Order") speaks for itself and denies any allegation in paragraph 18 that is inconsistent with or an inaccurate characterization of that order. Defendant denies any remaining allegations in paragraph 18.

19. The Court found in support of its decision that GLK failed to provide the plaintiffs with written agreements, thereby violating the Wisconsin Migrant Labor Act, Wis. Stat. § 103.915(1)(b).

**ANSWER:** Defendant asserts the May 2016 Order speaks for itself and denies any allegation in paragraph 19 that is inconsistent with or an inaccurate characterization of that order. Defendant denies any remaining allegations in paragraph 19.

20. Although GLK did not provide the *Jimenez* and *Ramirez* plaintiffs with written agreements, the Court found that the cannery nonetheless offered these workers employment subject to the condition that they obtain visas. According to the Court, receipt of a visa

constituted acceptance of the job offer from GLK's perspective, thereby creating a contract for employment.

**ANSWER:** Defendant asserts the May 2016 Order speaks for itself and denies any allegation in paragraph 20 that is inconsistent with or an inaccurate characterization of that order. Defendant denies any remaining allegations in paragraph 20.

21. The Court held that the applicable H-2B applications helped supply the employment contracts' missing terms.

**ANSWER:** Defendant asserts the May 2016 Order speaks for itself and denies any allegation in paragraph 21 that is inconsistent with or an inaccurate characterization of that order. Defendant denies any remaining allegations in paragraph 21.

22. By Orders dated March 17, 2017 and April 10, 2017, the Court awarded the *Jimenez* plaintiffs damages, excluding attorneys' fees and costs, as follows:

| *Jimenez* | |
|---|---|
| Damages, plus prejudgment interest, for failure to provide employment for full certified period | $599,819.21 |
| Damages to raise first week's wages to federal minimum wage rate. | $41,890.00 |
| Damages, plus prejudgment interest, to raise first week's wages from federal minimum to prevailing wage rate | $53,180.45 |
| Damages, plus prejudgment interest, for weeks with less than 40 hours employment | $29,378.41 |
| Damages for failure to pay workers the full costs of return transportation | $44,500.00 |
| Damages for failure to provide written recruitment disclosures | $8,340.00 |

| | |
|---|---|
| Damages for failure to provide written work agreements | $8,340.00 |
| Damages for unauthorized wage deductions for rent | $1,840.00 |
| Damages for failure to make and keep records of workers' permanent addresses | $8,340.00 |
| FLSA double damages | $41,890.00 |
| **Total:** | **$837,518.07** |

**ANSWER:** Defendant admits the Court awarded the *Jimenez* plaintiffs damages in the total amount of $837,518.07 by Order dated April 10, 2017. Defendant denies paragraph 22 accurately reflects the breakdown and description of damages provided in the April 10, 2017 Order. Defendant asserts the Court's Orders of March 17, 2017 and April 10, 2017, speak for themselves and denies any allegation in paragraph 22 that is inconsistent with or an inaccurate characterization of those orders. Defendant denies any remaining allegations in paragraph 22.

23. By Orders dated March 17, 2017 and April 10, 2017, the Court awarded the *Ramirez* plaintiffs damages, excluding attorneys' fees and costs, as follows:

| *Ramirez* | |
|---|---|
| Damages, plus prejudgment interest, for failure to provide employment for full certified period | $235,414.15 |
| Damages for failure to pay cost of inbound transportation | $11,158.00 |
| Damages for failure to pay workers the full costs of return transportation | $8,750.00 |

| | |
|---|---|
| Damages for unauthorized wage deductions for rent | $700.00 |
| Damages for failure to make and keep records of workers' permanent addresses | $700.00 |
| **Total:** | **$256,722.15** |

**ANSWER:** Defendant admits the Court awarded the *Ramirez* plaintiffs damages in the amounts identified above by Order dated April 10, 2017. Defendant denies paragraph 23 accurately reflects the description of damages provided in the April 10, 2017 Order. Defendant asserts the Court's Orders of March 17, 2017 and April 10, 2017, speak for themselves and denies any allegation in paragraph 23 that is inconsistent with or an inaccurate characterization of those orders. Defendant denies any remaining allegations in paragraph 23.

### **Travelers' Insurance Policy**

24. Travelers issued Wrap+ policy number 105722008 to GLK for the policy period from December 1, 2011 to December 1, 2012. The Travelers' policy provides EPL coverage on a claims-made basis, with a $5,000,000 Limit of Liability for all claims.

**ANSWER:** Defendant admits it issued Wrap+ policy number 105722008 to GLK for the policy period from December 1, 2011 to December 1, 2012 (the "Policy") and that the Policy provides coverage for covered Employment Practices Liability (EPL) claims on a claims-made basis and has an annual aggregate limit of liability of $5,000,000 for all EPL claims. Defendant affirmatively asserts the $5,000,000 aggregate limit on all EPL claims is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy.

25. The EPL insuring agreement provides that Travelers

> will pay on behalf of the **Insured, Loss** for any **Employment Claim** first made during the **Policy Period,** or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period, for a **Wrongful Employment Practice.**

**ANSWER:** Defendant admits paragraph 25 appears to accurately quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 25 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 25 of the Complaint.

26. **"Loss"** is defined in relevant part as

> **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim,** including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and postjudgment interest; and legal fees and expenses of a **Claimant or Outside Claimant** awarded pursuant to a court order or judgment.

**ANSWER:** Defendant admits paragraph 26 purports and appears to accurately quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 26 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 26 of the Complaint.

27. **"Claim"** is defined to mean "an **Employment Claim,"** and **"Employment Claim,"** in turn, is defined as

> …
>
> 2. a civil proceeding commenced by service of a complaint or similar pleading;
>
> …

against an **Insured** by or on behalf of or for the benefit of a **Claimant,** or against an **Insured Person** serving in an **Outside Position** by or on behalf of or for the benefit of an **Outside Claimant,** for a **Wrongful Employment Practice**….

**ANSWER:** Defendant admits paragraph 27 purports and appears to accurately quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 27 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 27 of the Complaint.

28. **"Wrongful Employment Practice"** is defined, in relevant part, as any actual or alleged:

…
5. **Wrongful Termination;**

6. breach of **Employment Agreement;**
…

10. failure or refusal to create or enforce adequate workplace or employment policies and procedures, employ or promote, including wrongful failure to grant bonuses or perquisites, or grant tenure;

**ANSWER:** Defendant admits paragraph 28 purports and appears to accurately quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 28 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 28 of the Complaint.

29. **"Employment Agreement"** means "any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement."

**ANSWER:** Defendant admits paragraph 29 purports and appears to quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 29 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 29 of the Complaint.

30. **"Wrongful Termination"** is defined as

> the actual, alleged or constructive termination of an employment relationship between a **Claimant** and the **Insured Organization,** or the actual or constructive termination of an employment relationship between an **Outside Claimant** and an **Outside Entity,** in a manner or for a reason which is contrary to applicable law or public policy, or in violation of an **Employment Agreement.**

**ANSWER:** Defendant admits paragraph 30 appears to accurately quote a portion of the Policy. Defendant asserts the Policy speaks for itself and denies any allegation in paragraph 30 that is inconsistent with or an inaccurate characterization of the Policy. Defendant further asserts coverage provided by the Policy, if any, is subject to the terms, conditions, limitations, exclusions and endorsements to the Policy. Defendant denies any remaining allegations in paragraph 30 of the Complaint.

### GLK's Tender of the Underlying Actions to Travelers

31. GLK tendered the defense and indemnity of the *Jimenez* and *Ramirez* cases to Travelers shortly after the underlying actions were commenced, in early 2012.

**ANSWER:** Defendant admits the allegations in paragraph 31 of the Complaint.

32. Travelers accepted GLK's tender of defense, subject to a reservation of rights.

**ANSWER:** Defendant admits the allegations in paragraph 32 of the Complaint.

33. A dispute has subsequently arisen between Travelers and GLK over the extent to which Travelers' policy obligates the insurer to indemnify GLK for the damages awarded the

*Jimenez* and *Ramirez* plaintiffs. GLK contends, and Travelers disputes, that the Wrap+ policy requires Travelers to indemnify GLK for at least $1,040,770.22 of the amounts awarded.

**ANSWER:** Defendant admits the allegations in paragraph 33 of the Complaint.

34. There is an actual controversy within the purview of 28 U.S.C. § 2201(a), concerning the extent to which the Wrap+ policy issued by Travelers provides coverage to GLK for the damages at issue in the underlying actions. This dispute is ripe for determination in this action

**ANSWER:** Paragraph 34 of the Complaint contains legal conclusions or assertions to which no answer is required. To the extent an answer is required, Defendant admits those allegations.

## CLAIM FOR DECLARATORY RELIEF

35. GLK re-asserts and incorporates the allegations in the paragraphs above as though fully set forth here.

**ANSWER:** Defendant reasserts and realleges its responses set forth in the paragraphs above.

36. The Travelers' policy provides indemnity coverage for at least the following damages, or **Loss,** which GLK is legally obligated to pay as the result of the *Jimenez* and *Ramirez* claims for **Wrongful Termination** and/or "actual or alleged…breach of **Employment Agreement:"**

- Damages, including prejudgment interest, based on GLK's failure to provide work for the full certified period of employment —$835,233.36 ($599,819.21 + $235,414.15);

- Damages, including prejudgment interest, based on payment of first week wages below the applicable prevailing wage rate —$106,228.45 ($41,890.00 + $53,180.45 + $11,158.00);

- Damages, including prejudgment interest, based on GLK's failure to provide 40 hours of work each week — $29,378.41; and

- Damages for failure to provide or pay for all the costs of return transportation when employment was terminated before the end of the certified employment period — $53,250.00 ($44,500.00 + $8,750.00).

13

**ANSWER:** Defendant denies the allegations in paragraph 36 of the Complaint.

37. The Travelers' policy also provides indemnity coverage for the $8,340.00 awarded by the Court for GLK's failure to provide written work agreements, pursuant to Wis.Stat. § 103.915(b). GLK is legally obligated to pay that amount based on the cannery's "failure or refusal to create and enforce adequate . . . employment policies and procedures" and, thus, the award constitutes damages for covered **Wrongful Employment Practices.**

**ANSWER:** Defendant denies the allegations in paragraph 37 of the Complaint.

38. The Travelers' policy provides indemnity coverage for the $8,340.00 awarded by the Court for GLK's failure to provide recruiting disclosures, pursuant to 29 C.F.R. § 500.75(b), for the same reason as that set forth in the preceding paragraph.

**ANSWER:** Defendant denies the allegations in paragraph 38 of the Complaint.

39. The Wrap+ policy contains no exclusions or limitations that preclude or reduce Travelers' indemnity obligations with respect to the foregoing amounts.

**ANSWER:** Defendant denies the allegations in paragraph 39 of the Complaint.

40. The Wrap+ policy may provide indemnity coverage for additional amounts awarded by the Court to the *Jimenez* and *Ramirez* plaintiffs.

**ANSWER:** Defendant denies the allegations in paragraph 40 of the Complaint.

## **DEFENSES**

### **First Defense**

There is no coverage under the Policy to the extent that the alleged liability or damages are excluded or fail to satisfy the Policy's insuring agreement or other terms and conditions, including but not limited to the requirement that the insured incur "Loss" for an "Employment Claim" for a "Wrongful Employment Practice."

**Second Defense**

To the extent that Plaintiff or any alleged insured has failed to mitigate, minimize or avoid any damage allegedly sustained, and/or to the extent that Plaintiff seeks coverage for damages incurred as the result of Plaintiff's or any alleged insured's failure to take reasonable steps to prevent or mitigate damage, Defendant has no obligations under any Policy.

**Third Defense**

These claims are reduced, in whole or in part, to the extent coverage is available under other insurance.

**Fourth Defense**

There is no coverage under the Policy to the extent Plaintiff seeks coverage for damages in connection with a claim(s) first made against it prior to the policy period.

**Fifth Defense**

There is no coverage under the Policy to the extent Plaintiff seeks coverage for damages in connection with a claim(s) based on any fact, circumstance, situation, event or wrongful act underlying or alleged in any prior or pending civil, criminal, administrative or regulatory proceeding against Plaintiff as of or prior to August 13, 2008.

**Sixth Defense**

There is no coverage under the Policy to the extent Plaintiff seeks coverage for damages in connection with a claim(s) based on any fact, circumstance, situation, event or wrongful act that is or reasonably would be regarded as a basis for a claim about which an executive officer had knowledge prior to August 13, 2008.

**Seventh Defense**

Defendant's coverage obligations, if any, under the Policy are limited by the limits of liability stated in the Policy, which are reduced by defense expenses, and limited by the retention.

**Eighth Defense**

To the extent Plaintiff's demand for coverage for damages incurred in the *Jimenez* and *Ramirez* actions constitutes a claim(s), the claim(s) are related claims and, as such, are considered a single claim under the Policy.

**Ninth Defense**

To the extent any sums are deemed to be covered under the Policy, there is an allocation provision that requires an allocation between covered and uncovered matters or covered and uncovered parties. Such allocation may reduce or eliminate any sums potentially owed by Defendants.

**Tenth Defense**

There is no indemnity obligation under the Policy to the extent the claim, if any, arises in connection with Plaintiff's violation of any wage and hour law, and such claims are subject to a claim limit of $100,000 for defense expenses only.

**Eleventh Defense**

Travelers has no obligation for loss under any agreement governing the terms of labor for an independent contractor, temporary worker or leased worker or to indemnify Plaintiff for any claim seeking damages or penalties under an express written employment agreement or sums sought for unpaid services.

**Twelfth Defense**

There is no coverage under the Policy to the extent Plaintiff seeks coverage for liquidated damages or damages, penalties or types of relief deemed uninsurable under applicable law.

**Thirteenth Defense**

There is no coverage under the Policy to the extent that any insured has violated the conditions of the Policy including the conditions for notice and voluntary payments, or assumption or admission of liability. In particular, there is no coverage for any sums incurred prior to notice to Travelers or without Travelers' consent.

**Fourteenth Defense**

Plaintiffs' claims are barred to the extent the Complaint fails to state a claim upon which relief may be granted.

**Fifteenth Defense**

These claims may be barred, in whole or in part, by the doctrines of laches, waiver, release, accord and satisfaction, unclean hands and/or estoppel.

**Sixteenth Defense**

The Complaint contains insufficient information to permit Travelers to raise all appropriate defenses and, therefore, Travelers reserves the right to assert additional affirmative defenses.

WHEREFORE, Defendant Travelers Casualty and Surety Company of America, requests entry of a judgment:

    A.    finding and declaring that Travelers did not have, and currently does not have, an obligation to indemnify Plaintiff for any payments for settlements or judgments it incurred or will incur with respect to the *Jimenez* or *Ramirez* matters; and

B.  adjudging and declaring that Travelers is entitled to further relief as may be necessary and proper.

Dated this 26th day of September, 2017.

                                        LITCHFIELD CAVO, LLP
                                        Attorneys for Defendant Travelers Casualty and
                                        Surety Company of America

                                        By:  s/ Ericka C. Piotrowski
                                            Dennis M. Dolan
                                            Ericka C. Piotrowski

P.O. Address
13400 Bishop's Lane, Ste. 290
Brookfield, WI 53005
Phone: (262) 784-8984
Fax: (262) 784-8812
piotrowski@litchfieldcavo.com